## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION


**RHONDA HALL**                                                                  **PLAINTIFF**


**VS.**                              **No. 2:22-cv-00123  PSH**


**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                              **DEFENDANT**


## ORDER

Plaintiff Rhonda Hall ("Hall"), appeals the final decision of the Acting
Commissioner of the Social Security Administration (defendant "Kijakazi") denying
her claim for Supplemental Security Income ("SSI").  The Administrative Law Judge
("ALJ") found Hall was not under a disability since November 13, 2019, her
amended alleged onset date.  Hall maintains the ALJ erred in two ways: (1) by failing
to develop the record regarding her work-related limitations; and (2) by utilizing a
hypothetical question, based upon an erroneous residual functional capacity ("RFC")
assessment, which failed to account for her limitations in concentration, persistence,
and pace.  The parties have ably summarized the testimony given at the telephonic
administrative hearing conducted on April 13, 2021.  (Tr. 36-69).  The Court has
carefully reviewed the record, including the medical records, to determine whether

there is substantial evidence in the administrative record to support Kijakazi's decision.  42 U.S.C. § 405(g).

*The Administrative Hearing:*

Hall was 52 years old at the time of the hearing, living with her adult daughter who assisted with rent and utilities.  She left school in the eighth grade.

The ALJ noted Hall alleged disability due to chronic obstructive pulmonary disease ("COPD"), bereavement, hepatitis C, right sided low back pain, right sided sciatica, and acute respiratory distress.  The ALJ identified the following impairments she observed from reviewing the record – COPD, disorders of the back, major depressive disorder, generalized anxiety disorder, PTSD, hepatitis C, hypertension, obesity, and gastroesophageal reflux disease ("GERD").

On questioning from the ALJ, Hall added arthritis in her hands to the foregoing lists of impairments.  She described some basics about her daily activities and habits – she had stopped smoking eight months earlier, did not use alcohol, drugs, or marijuana, attended church twice monthly (a ten minute drive followed by an hour long service), went to movies only once a year, and was entertained by time with her three grandchildren (ages 8, 7, and 2).

Hall was taking prescription medications for COPD, high blood pressure, back pain, arthritis, anxiety, and depression.  Hall used oxygen at night and approximately

every other day to address her COPD.  The medications for back pain, arthritis, and anxiety helped, and Hall reported no side effects.  The medications for depression helped "on occasion" but Hall still experienced pain stemming from the death of her son in January 2019.  (Tr. 53).

Previous work experience included a year long stint in 2016 as a part-time health care assistant, working at a granary in 2008 where she lifted 20-30 pounds, and a one-night attempt at a dishwasher job.  Also, she lived with and cared for an elderly man in 2020, preparing meals, assisting with his showers, and "just a little house cleaning."  (Tr. 58).

Hall reported trouble walking due to a fracture of her foot six years earlier, and estimated she could sit for only 2 hours, could stand in one spot for 20-30 minutes, and lift about 20 pounds.

Upon further questioning by her attorney, Hall explained that the arthritis in her hands produced pain and numbness, limited her ability to open jars and bottles, and resulted in her dropping items.  She estimated she could lift a gallon of milk but did not think she could lift 20 pounds for 1/3 of a work day.  (Tr. 43-61).

Kevin Lee Ross ("Ross"), a vocational expert, testified.  Ross was asked to consider a hypothetical worker of Hall's age, education, and experience, who could perform light work except she would need to avoid concentrated exposure to fumes,

odors, dust, gases, or poor ventilation, would be limited to performing simple routine tasks and simple work-related decisions in a low stress work environment (defined as requiring no decisions or judgments to be made on any executive, managerial, fiscal, or personnel matters), could tolerate frequent interactions with co-workers, supervisors, and the public, and could participate and cooperate with supervisors and co-workers during the training period for unskilled work. Ross responded that such a worker could not perform Hall's past relevant work but could perform the jobs of material distributor, merchandise marker, or routing clerk. Ross further testified that such a worker would not be able to perform the cited jobs if her impairments interfered with her 20% of the workday, or if the impairments caused her to miss two or more days a month. (Tr. 61-68).

*ALJ's Decision:*

In her May 5, 2021 decision, the ALJ determined Hall had the following severe impairments: COPD, disorders of the back, major depressive disorder, generalized anxiety disorder, and PTSD. The ALJ found the following impairments were non-severe: hepatitis C, hypertension, obesity, GERD, and arthritis of the bilateral hands. The ALJ found Hall did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly considered if Hall met Listing 1.15 (disorder of the skeletal spine), 3.02A (chronic

respiratory disorder), and 12.04, 12.06, and 12.15 (mental impairments).  In reaching

this conclusion, the ALJ considered the "paragraph B" criteria regarding mental

impairments.  The ALJ found Hall had a moderate limitation in understanding,

remembering, or applying information; interacting with others; adapting or managing

oneself; and concentrating, persisting, or maintaining pace.  The ALJ also determined

Hall did not satisfy the requirements of "paragraph C" because the record did not

demonstrate existence of the disorder for at least two years combined with ongoing

treatment and reduced capacity to adjust to demands that are not already part of her

daily life.  The ALJ emphasized that the limitations identified in the "paragraph B"

analysis were not a residual functional capacity ("RFC") assessment, and that the RFC

assessment "requires a more detailed assessment of the areas of mental functioning."

(Tr. 25).

The ALJ found Hall had the RFC to perform a range of light work with the

restrictions which mirrored those detailed in the initial hypothetical question posed to

Ross. The ALJ, citing the appropriate factors, determined that Hall's subjective

allegations concerning the intensity, persistence, and limiting effects of her symptoms

were "not entirely consistent with the medical evidence and other evidence in the

record."  (Tr. 26).

The ALJ thoroughly discussed the medical evidence, beginning with Hall's

November 2019 visit to a pulmonologist at Baptist Memorial Health Care regarding her COPD.  The ALJ examined Hall's medical care for both physical and mental impairments, including numerous mental health visits at Renew Mental Health and Wellness, beginning in April 2020.  She also noted the opinion evidence provided by the consultative examiner and four state agency medical consultants, finding all five opinions unpersuasive.  Consultative examiner Dr. Jones opined that Hall had no adaptive functioning limitations, and the ALJ disagreed, noting her anxiety with panic attacks, dysphoric moods, and depressive symptoms.  State agency consultant Dr. Bucolo opined Hall's anxiety was nonsevere and the "paragraph B" criteria were all mild.  The ALJ found Hall's mental impairments severe and her "paragraph B" criteria moderate.  State agency consultant Dr. Fields opined Hall could perform light work with no environmental limitations, while the ALJ found that Hall's COPD would warrant environmental restrictions.  State medical consultant Dr. Mourot found Hall's anxiety and depressive disorders nonsevere and the "paragraph B" criteria mild.  The ALJ, as with Dr. Bucolo, disagreed.  Finally, state medical consultant Dr. Hicks opined Hall could perform light work with no environment limitation, and the ALJ found restrictions were in order.  In all, the ALJ found Hall more limited than described in the opinions expressed by these five individuals.  The ALJ determined Hall could not perform her past relevant work.  However, relying upon Ross'

testimony, the ALJ held that Hall could perform other work in the national economy. Accordingly, the ALJ concluded she was not disabled.  (Tr. 20-31).

*ALJ error in failing to adequately develop the record.*

Hall contends this is a complex medical case, and the ALJ was without adequate medical data to reach an informed decision.  She notes that the opinion from consultative psychologist Dr. Jones was rendered without a review of all of her medical records, and that the opinions of the four state agency medical and psychological consultants were based only on a review of some of the medical records and formed without a physical examination.  Hall also contends there is no opinion from a treating or examining physician that addresses her work-related limitations, and no medical evidence to support the ALJ's conclusion that she can perform light work with the restrictions cited by the ALJ.

A review of the record shows Hall was treated frequently at Two Sisters Family Medical during the year preceding her onset date of November 13, 2019.  She also went to the emergency room at NEA Baptist Memorial Hospital in February, July, and August 2019.  Hall was treated for a variety of impairments during this period, including COPD, shortness of breath, bereavement, back pain, allergies, coughing, hepatitis C, and anxiety.  She was counseled to cease smoking.  Hall was seen as a new patient by Dr. Ali Haydar ("Haydar") on November 12, 2019, one day before her

onset date.  Haydar diagnosed her with tobacco abuse, COPD, hypertension, hepatitis C, anxiety, long term prescription benzodiazepine use, obesity, and chronic low back pain.  (Tr. 593).  Hall was seen by Haydar again in February, May, and August 2020. (Tr. 581-585, 650-655, 620-627).

In addition to Haydar, Hall was seen for a consultative mental examination in February 2020, seen for mental health care at Renew Mental Health approximately fourteen times beginning in April 2020, went to the emergency room twice during this period, went to an urgent care clinic twice, had an ultrasound of her liver, and was tested for pulmonary function.  (Tr. 561-565, 627-688, 459-465, 691-714, 586-588, 625-627, 448, 276-278).  In all, the relevant period reflects numerous medical care encounters, both for physical and mental treatment.

Even though Hall is correct that the ALJ has a duty to fully and fairly develop the record, she fails to demonstrate how the record, which appears to contain all treatment records during the relevant period, was inadequate and how additional reports would cure the inadequacy.  The objective medical evidence in this case was ample and the ALJ's decision was well-informed.  *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient).  At the administrative hearing, Hall's counsel informed the ALJ there was one  addition to the existing record, which

was filed with the ALJ later that day.  (Tr. 41-42, 68).  While the ALJ has an obligation to fully develop the record, there is no bright line test for determining whether she has done so; the determination is made on a case by case basis.  *See Battles v. Shalala*, 36 F.3d 43 (8th Cir. 1994).  The key is whether the record provides the ALJ with ample information to allow an informed decision to be made.  Here, the medical evidence is ample.  Hall, who bears the burden of demonstrating her disability, does not show that the ALJ, tasked with digesting all of the evidence, erred in relying upon the record before her.

Hall faults the ALJ for failing to rely upon a specific opinion rendered by a treating physician.  While it is true that there is no single treating opinion addressing particular work-related functions,  and while such an opinion or opinions would have been helpful, one was not required.  *See Hensley v. Colvin*, 829 F.3d 926 (8th Cir. 2016) (no requirement that an RFC finding be supported by a specific medical opinion).  Medical records from treating physicians can provide affirmative medical evidence supporting an RFC determination. *Johnson v. Astrue*, 628 F.3d 991 (8th Cir. 2011).  Here, the absence of any limitations imposed by treating physicians  in excess of her ALJ-determined RFC is significant.  Further, it is noteworthy that the ALJ found Hall was *more* limited than all of the five opinions rendered by Dr. Jones and the state agency physicians.  The record provides a sound basis for the ALJ to

determine her RFC, and substantial evidence supports her findings.  The ALJ did not err in failing to further develop the record.

> *ALJ error in utilizing a hypothetical question, based upon an erroneous RFC assessment, which failed to account for her limitations in concentration, persistence, and pace.*

Hall next claims error because the ALJ's RFC and hypothetical question failed to account for her moderate limitations in the ability to concentrate, persist, or maintain pace.  The RFC determination included the following restrictions:  work limited "to the performance of simple routine tasks and simple work-related decisions . . . limited to a low-stress environment [no decisions on executive, managerial, fiscal, or personnel matters] . . . tolerate frequent interactions with co-workers, supervisors, and the public . . . able to participate and cooperate with supervisors and co-workers during the training period for unskilled work."  (Tr. 62).  Even though the ALJ found moderate limitations in concentration, persistence, and pace at Step 3, the RFC determination was not identical to the Step 3 findings.  There is no error in differing findings at Step 3 and in the RFC.  Each step of the sequential evaluation process serves a distinct purpose, "the degrees of precision required at each step differ," and the deferential standard of review precludes the Court from labeling findings as inconsistent if they can be harmonized.  *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) [citing *Lacroix v. Berryhill*, 465 F.3d 881, 888 n.3 (8th Cir. 2006)

("Each step in the disability determination entails a separate analysis and legal standard.")].  *See also Berry v. Berryhill*, No. 3:17cv245 PSH (E.D. Ark. Jul. 11, 2018) (an ALJ's findings at Step 3 are not the same as an RFC assessment).

Citing *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996),[1] *Brachtel v. Apfel*, 132 F.3d 417 (8th Cir. 1997), and other cases, Hall argues that the hypothetical question posed to Ross was inadequate, as it should have included a specific limitation for concentration, persistence, and pace or, in the alternative, more specific limiting language, such as describing the work as not requiring close attention to detail, the phrase used in *Brachtel*.  The Court finds that the hypothetical question adequately captured the consequences of Hall's deficiencies of concentration, persistence, and pace.  The RFC, as previously cited, does not contain the Step 3 limitations.  Instead, it contains the list of job requirements quoted above.  These limitations are more detailed than simply limiting Hall to "simple jobs" and satisfies the ALJ's burden regarding the specificity of the question posed to Ross.

Under these circumstances, the ALJ had no obligation to explicitly include the Step 3 limitations she noted in the hypothetical question posed to Ross.  The ALJ is

---

[1]

In *Newton*, there was no dispute that the claimant suffered from deficits in concentration, persistence, or pace, with the ALJ noting that the claimant "often" suffered from these limitations.  Unlike the present case, the ALJ's hypothetical in *Newton* limited the worker to "simple jobs" with no further elaboration.  92 F.3d at 695.

responsible "to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ carried out this responsibility, and substantial evidence supports the RFC conclusion she reached. The hypothetical question, built upon the foundation of the RFC, adequately captured Hall's abilities, accounting for her mental impairments. There is no merit to Hall's challenge to the RFC or the hypothetical question posed to Ross.

In summary, Kijakazi's decision was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case

Accordingly, the Court affirms Kijakazi's final decision and dismisses Hall's complaint be with prejudice.


IT IS SO ORDERED this 1st day of March, 2023.



_____

UNITED STATES MAGISTRATE JUDGE